**DAMA S.P.A, Plaintiff,**

v.

**JOHN DOES 1–35, Defendants.**

No. 15–cv–4528 (VM).

United States District Court,
S.D. New York.

Signed June 24, 2015.

Joseph Christopher Gioconda, The Gioconda Law Group PLLC, New York, NY, for Plaintiff.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Dama S.p.A. ("Dama") commenced this action on June 11, 2015 (*see* Dkt. No. 1) against John Does 1–35 ("Defendants"), and simultaneously moved *ex parte* for a Temporary Restraining Order, Seizure Order, Asset Restraining Order, Domain Name Transfer Order, Order Permitting Service by Electronic Mail, and an Order to Show Cause for a Preliminary Injunction. Sitting in Part I, Judge Sullivan, Federal District Judge for the Southern District of New York, issued an Order ("TRO"), granting the request in part and denying the request in part. (Dkt. No. 4.) Pursuant to the TRO, Dama arranged for all the Defendants to be served by electronic mail by June 15, 2015. An affidavit of service demonstrating timely service in compliance with the Court's Order is on file with the Court. (Dkt. No. 7.)

Defendants, having been served with the Complaint, TRO, and all related papers, have not appeared or opposed Dama's application for a preliminary injunction. The Court held a preliminary injunction hearing on June 19, 2015, pursuant to the TRO, at which none of the Defendants appeared.

Now, the Court, having reviewed the Complaint, Memorandum of Law, supporting Declaration and Affidavit, and the exhibits submitted therewith, finds that:

█ 1. As set forth more fully below, Dama has demonstrated that it is entitled to injunctive relief by establishing the following: (a) Dama is likely to succeed on the merits of its claims for trademark counterfeiting and trademark infringement under Sections 32(1)(a) and (b) of the Lanham Act, trade dress infringement and false designation of origin under Section 43(a) of the Lanham Act, and trademark dilution under Section 43(c) of the Lanham Act, its New York state law claims for trademark dilution and deceptive acts and practices, and its claims for common law trademark infringement and unfair competition; (b) Defendants' unlawful conduct has caused and will continue to cause Dama irreparable harm in the absence of an injunction; (c) remedies at law are inadequate to compensate Dama for that harm; (d) the balance of hardships tips in Dama's favor; and (e) the public interest favors injunctive relief.

2. The Plaintiff has offered evidence that it is the registrant and/or owner of the following federally registered trademarks (the "Paul & Shark Trademarks"):

| U.S. Registration Number | Trademark | Registration Date | International Classes |
|---|---|---|---|
| 4, 553, 480 | [symbol below] | May 20, 2014 | 18 and 25 |
| 2, 562, 396 | [symbol below] | April 16, 2002 | 18 |
| 1, 421, 211 | [symbol below] | Dec. 16, 1986 | 25 |

3. Dama has demonstrated that it is likely to succeed in showing that Defendants are entities or individuals operating a network of sophisticated websites (the "Infringing Websites") in order to sell products bearing counterfeit reproductions of the Paul & Shark Trademarks ("Counterfeit Products") to consumers in the United States and in this Judicial District.

4. Dama has demonstrated that it is likely to succeed in showing that Defendants' continued manufacturing, distribu-

tion, offering for sale, and sale of Counterfeit Products has caused and will continue to cause irreparable injury to the Plaintiff if injunctive relief is not granted.

5. Dama has demonstrated that it is likely to succeed in showing that Defendants registered and are using domain names in connection with Infringing Websites selling and offering for sale Counterfeit Products, including several domain names incorporating in whole or in part one or more of Dama's trademarks (the "Infringing Domain Names"), in violation of the Anticybersquatting Consumer Protection Act (listed in Exhibit A).

■■ 6. Dama has shown that, absent a preliminary injunction, there is a substantial likelihood that Defendants would hide, secrete, or deplete any assets, thus frustrating the ultimate relief Plaintiff seeks in this action.

7. Dama has demonstrated that it has no adequate remedy at law for the harm caused by Defendants' operation of the Infringing Website and production and selling of the Counterfeit Products.

8. Dama has demonstrated that entry of an order other than a preliminary injunction would not adequately achieve the purposes of the Lanham Act to preserve Plaintiff's equitable and monetary remedies for trademark counterfeiting, including, among other things: the restraint of Defendants' domain names and Infringing Websites, which constitute Defendants' means of distributing, offering for sale, and selling Counterfeit Products; and an award to Dama of lost profits or statutory damages, as well as attorney's fees and costs.

9. Dama has demonstrated that the harm to Dama from denial of the requested preliminary injunction would outweigh any harm to any cognizable interest of Defendants from granting such a prelimi-

nary injunction, and thus the balance of hardships tips in Dama's favor;

10. Dama has demonstrated that the public interest favors a preliminary injunction in this case because Defendants' unlawful conduct causes consumer confusion and will continue to cause consumer confusion unless enjoined.

### *ORDER*

Accordingly, it is hereby

**ORDERED** that John Does 1–35 ("Defendants"), and their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with them, are **PRELIMINARY ENJOINED** from infringing the Paul & Shark Trademarks or plaintiff Dama S.p.A.'s ("Dama") rights therein, or using or exploiting the Paul & Shark Trademarks, by:

a. Using any reproduction, counterfeit, copy, or colorable imitation of the Paul & Shark Trademarks for or in connection with any goods or their packaging not authorized by Dama;

b. Engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure Dama's business reputation, or to dilute the distinctive quality of the Paul & Shark Trademarks;

c. Using any false description or representation, including words or other symbols tending falsely to describe or represent Defendants' unauthorized goods or their packaging as Dama's, or as sponsored by or associated with Dama, and from offering such goods into commerce;

d. Manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying, or otherwise disposing of any products or packaging not authorized by Dama

that bear any simulation, reproduction, counterfeit, copy, or colorable imitation of the Paul & Shark Trademarks;

e. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which is or may be likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by Defendants are in any manner associated or connected with Dama, or are sold, manufactured, licensed, sponsored, approved, or authorized by Dama;

f. Secreting, destroying, altering, removing, or otherwise disposing of the Counterfeit Products, or any books or records that contain any information relating to the importation, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all Counterfeit Products;

g. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

h. Using, linking, transferring, selling, exercising control over, or otherwise owning the Infringing Domain Names, or any other domain name that incorporates, in whole or in part, any of the Paul & Shark Trademarks, or any domain name that is used in connection with any Infringing Website;

i. Creating, operating, owning, overseeing, or otherwise exercising control over any Infringing Websites selling, offering to sell, promoting, advertising, or otherwise depicting any Counterfeit Products;

j. Creating, operating, owning, overseeing, or otherwise exercising control over any Infringing Websites embedding, incorporating, including, or otherwise displaying any of the Paul & Shark Trademarks, or any of Dama's promotional and advertising campaign images; and

k. Processing any payments for or otherwise providing any online services relating to the sale of Counterfeit Products; and it is further

**ORDERED** that Dama shall provide notice of this Order to the Internet registries responsible for overseeing the top level domains in which the Defendants' domain names appear; and it is further

**ORDERED** that such Internet registries shall immediately place Defendants' domain names on registry lock, making the domain names non-transferrable by Defendants, and on registry hold, which prevents any websites associated with the domain names from resolving when queried by a browser; and it is further

**ORDERED** that in accordance with Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. Section 1116(a) and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, any financial services provider that seized any of Defendants' funds, accounts, or assets pursuant to the TRO shall remain preliminarily restrained and enjoined from transferring or disposing of any such funds, accounts, or assets without prior approval of the Court, until trial; and it is further

**ORDERED** that Dama may complete service of process on Defendants by electronic mail to the email addresses enumerated in Exhibit B. Dama has demonstrated

that completing service of process on these email addresses will provide adequate notice to Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that, once service of this Order has been effectuated on Defendants by Dama, Defendants shall be deemed to have actual notice of its issuance and terms, and any act by Defendants or any one of them in violation of any of the terms thereof may be considered and prosecuted as contempt of this Court.

**SO ORDERED.**

## *EXHIBIT A*

## *DEFENDANTS' DOMAIN NAMES*

1. apparelorder666.com
2. apparelparty555.com
3. hry-wide.com
4. hrywell.com
5. olawide.com
6. topkleding.com
7. paulsharkoutletitaly.com
8. paulandsharkmilan.com
9. paulandsharktrend.com
10. sharksaleonline.com
11. italyclothingoutlet.com
12. sharksalestore.com
13. deankirklandfan.com
14. codepromo-sup.com
15. dratmamin.com
16. mariemagenta.com
17. fengbeads.com
18. sagarsutar.com
19. 9channel.com
20. paulandsharkshoponline.com
21. premiumpaulsharkoutlet.com
22. paulandsharkoutletonline.com
23. paulsharkoutletstore.com
24. fashionappareloutlet.com
25. beterprice.com
26. ibagplace.com
27. cheapapparelsale.com
28. dekmall.net
29. golowholesale.com
30. golocheap.com
31. goleclothing.com
32. golefashion.com
33. nnjordanshoes.net
34. exportsun.com
35. nicerain.com
36. supplyrain.com
37. perfectyours.com
38. nicecloes.com
39. anpeva.com
40. fashion-1.com
41. fashionbrother.com
42. buymallshows.com
43. intrigostore.com
44. mengya668.com
45. bestbrandmart.com
46. lindashopeasy.com
47. lindashop33.com
48. mylindamart.com
49. mycashcounts.com
50. nikefactorystoreonline.com
51. imiqifashion.com
52. clcw8.com
53. vetestore.com
54. outletropademarca.com
55. shopbrandsonline.net
56. outletttrend.com
57. italianoffer.com

58. bobhiphop.net

59. leonshoping.com

60. qliki.us

61. ropaonline.net

62. fashiondhl.com

63. fashionnba.com

64. cheapsale7.com

65. watchesdata.com

66. cameshops.net

67. lfpjersey.com

68. hiextrust.com

69. bigsavesneaker.com

70. polo001.com

71. perfect-kicks.com

72. walk-street.com

73. walk-street.net

74. zanottimenssneakers.com

Editor's Note: Exhibit B, which lists e-mail addresses for John Doe defendants, was redacted by the publisher.